UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re:<br>TYRONE A. CONARD<br>JOYCE L CONARD<br>　　　　　Debtors | Case Number 14-10094-KHK<br>Chapter 7 |
| TYRONE A. CONARD<br>JOYCE L CONARD<br>　　　　　Plaintiffs<br>　　　v.<br>INTERNAL REVENUE SERVICE<br>　　　　　Defendant | Adv Pro 16-01121-KHK |

**DEBTORS' ANSWER TO MOTION FOR SUMMARY JUDGMENT**

**STATEMENT**

　　Debtors Tyrone and Joyce Conard brought this Adversary Proceeding to determine whether their tax liabilities for the years 2004 through 2009 have been discharged.

　　There is no dispute that those tax years were old enough to be discharged under 11 USC §§523(a)(1)(A) and 507(a)(8). Instead, the Government cites §523(a)(1)(c) which bars discharge for tax years where debtor "made a fraudulent return or willfully attempted in any manner to evade or defeat such tax."

　　Although returns were late filed, the Government makes no argument that they were "fraudulent." The only issue is whether Tyone and Joyce Conard "willfully attempted...to evade or defeat such tax."

　　Mr & Mrs Conard are the plaintiffs, but the Government bears the

Answer to Motion for Summary Judgment, page 1

burden of proof. *Grogan v Garner*, 498 US 279, 286-87. See also *U.S. v. Clayton,* 468 B.R. 763, 769-770. (M.D. N.C. 2012) Exceptions to discharge are strictly construed in favor of the debtor. *Dalton v IRS*, 77 F.3d 127,1301. (10th Cir. 1996).

Proof of failure to pay the tax is not enough to deny discharge. *In re Haas*, 48 F.3d 1153, 1158 (11th Cir. 1995). Failure to pay may merely show "insufficient resources" to meet obligations. *Id.* at 1156. Unpaid debts, of course, are the universal problem of bankrupt debtors.

**LATE FILED TAXES**

The Government's argument rests heavily on the fact that "they never filed a return on time during this period." Failure to file on time plus failure to pay justifies summary judgment, in the Government's view.

The Government cites no cases to support that position.

Two leading cases where failure to file is prominent in circuit court opinions are *In re Bruner*, 55 F.3d 195 (5th Cir. 1995) and *In re Birkenstock*, 87 F.3d 947 (7th Cir. 1996). In both of these cases debtors attempted to discharge taxes in bankruptcy after they had been indicted, and pled guilty (Birkenstock) or been convicted (Bruner), for criminal failure to file tax returns.

By contrast, Tyrone Conard was aware of his obligation to file and pay and obtained the services of what he believed to be a responsible accounting firm, JK Harris. Mr. Conard directed JK Harris to get his returns filed and get into compliance. See Government's Ex. A (Depo Tr of T. Conard) at 47:16 – 48:12. Mr. Conard also consulted a leading Northern Virginia tax practitioner, Burton J Haynes, Esq. Id. 54:18-19.

Of course, the Bankruptcy Code envisions discharge of taxes which are filed late, as the Conards' taxes were. See 11 USC §523(b)(ii).

Late filing does not prove willful evasion; criminal failure to file does.

It is significant that even in these two circuit court cases, the courts

relied on evidence beyond criminal tax evasion for failure to file returns. The Bruners "conducted an inordinate number of cash transactions and even created a shell entity designed to conceal their income and assets." *Bruner,* at 200. The Government alleges nothing done by the Conards to match the Bruner case, with "a pattern of non-payment...accompanied by a pattern of failure to file returns and **coupled with** conduct obviously aimed at concealing income and assets." *Id.* (Emphasis added.)

Similarly "the Birkenstocks' conduct went beyond merely not paying their taxes, including both a [criminal] failure to file returns and an attempt to conceal income. "Mr. Birkenstock failed to file any returns for the years 1980 through 1983 until after he was convicted years later for willful failure to file. And during the years 1977 through 1979, the Birkenstocks had attempted to attribute their personal income to their family trust." *Birkenstock*, at 952.

A Sixth Circuit case, *In re Toti*, 24 F.3d 806 (6th Cir. 1994) did deny discharge based on only two elements: failure to pay the taxes and criminal failure to file. "From 1974 through 1981, Toti did not file federal income tax returns or pay federal income taxes." Although no concealment was proven, the failure to file led to criminal prosecution. "In 1981,Toti was indicted on three counts of failing to file federal income tax returns for the years 1974, 1975, and 1976. On June 4, 1981,Toti pleaded guilty."

In contrast to Bruner, Birkenstock and Toti, Mr Conard sought professional assistance and filed his tax returns. His conduct, seeking professional help and filing, is evidence of a desire to meet his obligations rather than willfully evade them.

**LAVISH PERSONAL EXPENDITURES**

The Government relies on a 2012 case from the Middle District of North Carolina for the proposition that lavish personal expenditures and an extravagant lifestyle, while taxes went unpaid, is sufficient to prove a willful evasion of taxes. *U.S. v. Clayton,* 468 B.R. 763 (M.D. N.C. 2012). Nothing in the Government's summary judgment motion comes near to the expenditures of Mr. Clayton, which were found to

be lavish and extravagant.

Mr Clayton's income averaged over $700,000 a year. *Id*. at 765. His mortgage on his 2.2 million dollar home (in the Middle District of North Carolina!) was $10,000 a month. *Id.* at 767. He had a swimming pool, exotic animals, including zebras, leopards, and monkeys. *Id*. And his monthly electric bill was $2,000. *Id.*

The Government in this Conard case cites nothing comparable. The closest to lavish expenditures are Mr Conard's expensive automobiles, a Mercedes, a BMW, and a Buick. However, Mr. Conard explains that he was told by his supervisor that in order to recruit agents, he needed to drive expensive cars to look successful. Government's Ex. A (Depo Tr of T. Conard) at 78:15-22.

The Government criticizes Mr. and Mrs Conard for taking one (!) personal vacation this entire six year period. That was a trip to the Bahamas that Tyrone Conard "won" from his employer: a less than all expense paid trip. Id. At 92:9 – 93:20. One partially paid for vacation in six years is closer to frugal than lavish.

Another point of comparison between the Conards and Mr. Clayton is higher education for their children. Mr. Clayton paid all expenses for college for one daughter for, apparently six or seven years, another daughter for four. And his son through college, masters and PhD. *In re Clayton*, at 767.

In contrast Mr Conard paid tuition for his son to attend a two year auto mechanic program. Government's Ex. A (Depo Tr of T. Conard) at 85:14-15.

For their most expensive recreational activity, the Conards were members of a $237 a month boat rental club, in Occoquan. For six months, of this six year period. Government's Ex. A (Depo Tr of T. Conard) at 94:4-95:3.

The Conards' mortgage payment was $1665 a month. Government's Ex. D (Answers to Interrogatories) Q 8. (This not lavish. Indeed, it was slightly less than the mean test standard pf $1760 for a two person family in Prince William County for cases filed in 2014.)

## TYRONE CONARD IS AN HONEST BUT UNFORTUNATE DEBTOR

Tyrone Conard's first career was as a truck driver. Later he worked for the City of Cleveland Heights, Ohio, in the Service Department. Government's Ex. D (Answers to Interrogatories) Q 1.

He later went to work as an agent for American Income, a life insurance company. He was successful as an agent, and as a recruiter. So he was promoted to "State Director" for the DC, Maryland and Northern Virginia region. Government's Ex. D (Answers to Interrogatories) Q 1; Government's Ex. A (Depo Tr of T. Conard) at 8:12-14.

He had no background or training in management or finance. Government's Ex. D (Answers to Interrogatories) Q 1.

Conard expected that as state director he was taking over an existing agency. But he came to learn he was expected to build up a business, with multiple offices, agents and support staff, from scratch, at his own expense. Government's Ex. A (Depo Tr of T. Conard) at 8:8 – 10:16; 58:14-21.

In order to finance this business, he took a home equity loan in 2006 from Chase for $150,000 and a signature loan from Sovereign Bank, in 2008, for $100,000. All that money went into the business. Government's Ex. D (Answers to Interrogatories) Q 10.

Unable to succeed, in 2010 he was released from his contract and resigned from American Income. Government's Ex. A (Depo Tr of T. Conard) at 27:1-3.

## JOYCE CONARD

Although the Government's Motion apparently encompasses both debtors, Joyce Conard is only mentioned by name once—in the second paragraph—of the motion, where the Government asserts "Tyrone Conard...and his wife Joyce Conard, earned substantial income during 2004 – 2009." The Government is simply attributing Tyrone Conard's income, and his conduct, to his wife.

The heart of the Government's position is that Tyrone Conard prioritized his business over his tax obligation. The Government offers no evidence, has no evidence, that Joyce Conard was involved in those decisions, or that she had any major source of independent income to use to pay the tax liabilities. And, of course, there is no assertion against either of them that assets or income were concealed.

There is no basis whatever for the award of summary judgment against Joyce Conard. Without more evidence that has been put before the Court, the Government should consent to the discharge of Joyce Conard's taxes. See I*n re Birkenstock,* 87 F.3d 947, 953 (7th Cir. 1996).

## CONCLUSION

The purpose of the bankruptcy law is to give a fresh start to the honest, but unfortunate debtor. "This purpose of the act has been again and again emphasized by the courts as being of public as well as private interest, in that it gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns *at the time of bankruptcy,* a new opportunity in life and a clear field for future effort…" *Local Loan v. Hunt,* 292 U.S. 234 (1934).

If this court grants a discharge to the Conards for their tax liabilities (and the IRS then releases their liens) Mr. Conard can again be fully employed in the field where he was very successful (before being thrown into situation beyond his qualifications or training.)

With continuing tax problems, Tyrone Conard is trapped on the margins of the insurance business, unable to obtain responsible employment. Government's Ex. A (Depo Tr of T. Conard) at 137:6-20.

The Government has alleged nothing to show that he deserves to be trapped there, and it does not benefit society, or the Government, or anyone, to deny his discharge for these taxes.

                              Respectfully submitted,

                              TYRONE A. CONARD
                              JOYCE L. CONARD

By__/s/___Robert R Weed__  
Robert R Weed, VSB 24646  
Law Office of Robert Weed  
Attorney for Debtor Natasha Porter  
300 Garrisonvile Rd  
Stafford VA 20164  
703-335-7793  
robertweedlaw@yahoo.com

Certificate of Service

I certify that I served the forgoing, by electronic means through the ECF system on Nelson Wagner, Esq, for the United States, and the Office of the US Trustee.

By__/s/___Robert R Weed__
Robert R Weed, VSB 24646
Law Office of Robert Weed
Attorney for Debtor Natasha Porter
300 Garrisonvile Rd
Stafford VA 20164
703-335-7793
robertweedlaw@yahoo.com