IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | Case No. 14-10093-KHK |
| | ) | Chapter 7 |
| TYRONE A. CONARD, | ) | |
| JOYCE L. CONARD, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | Adv. Proc. No. 16-01121-KHK |
| TYRONE A. CONARD, | ) | |
| JOYCE L. CONARD, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INTERNAL REVENUE SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**INTERNAL REVENUE SERVICE'S REPLY
ON MOTION FOR SUMMARY JUDGMENT
(CORRECTED COPY)**

The Conards do not contest the gravamen of the government's motion for summary judgment (the "Motion," Dkt. 20). They do not claim ignorance of the extent of their tax liability or inability to pay it as it accrued—two scenarios that might befall an honest but unfortunate debtor. Similarly, they present no evidence of a good-faith effort to pay tax, leaving bare the fact that they paid $4,931 of $344,226 in self-declared income tax (*i.e.*, less than 2%), despite earning more than $200,000 a year. They do not dispute that they funneled tax dollars into a business that continues to pay residual commissions of $11,000 per month. They do not dispute the discretionary luxury expenditures listed in the motion for summary judgment. The crux of their

argument is that it "does not benefit society" for their residuals to be encumbered by the tax debt that financed them.

The Conards offer a handful of arguments at the margins, none of which rebut the primary allegations regarding willfulness. They also fail to rebut the fundamental inequity that they seek: Keeping the residuals while extinguishing the tax debt that financed them. The bankruptcy code does not grant debtors a windfall when they have willfully diverted their tax dollars to pay for business expenses and luxury goods.

## I.     "Willful" Does Not Mean "Criminal"

The Conards' first tactic is to attempt to muddy the definition of "willful." They claim that willfulness requires "criminal failure to file." *See* Op. to Mot. for Summ. J. (the "Opposition," Dkt. 27). However, the case law makes clear that when Congress wrote "willful," it did not mean "criminal," "fraudulent," or any other similar term. *See U.S. v. Clayton*, 468 B.R. 763, 769-770 (M.D. N.C. 2012) ("[t]he Government need only demonstrate that the debtor's actions were willful—not that he acted with fraudulent intent."); *In re Fegeley*, 118 F.3d 979, 984 (3rd Cir. 1997) (same). Willfulness exists where the debtor "(1) had a duty to file income tax returns and pay taxes; (2) knew that he had such a duty; and (3) voluntarily and intentionally violated that duty." *Clayton* (citing *United States v. Fretz,* 244 F.3d 1323, 1330 (11th Cir.2001); *see also In re Irvine*, 163 B.R. 983, 987 (Bankr. E.D. Pa. 1994) ("[A] debtor will be considered to have willfully attempted to evade a tax if he acted voluntarily, consciously or intentionally or with reckless disregard for whether the tax has been paid. With respect to § 523(a)(1)(C), a debtor acts with reckless disregard if he knew or should have known that the tax was due and did not pay the tax"). As discussed in the Motion for Summary Judgment (the "Motion," Dkt. 20), willfulness is present here based on the Conards' knowledge of their tax liabilities; history of

2

filing late and paying less than 2% of their obligation despite having the resources to pay more; admission that they put tax obligations "on the back burner" in order to fund a business expansion; and lavish spending on business investments and luxury items. *See* Mot. at p. 9.

In attempting to elevate the legal standard for willfulness, the Conards mischaracterize the United States' position. They claim that "[f]ailure to file on time plus failure to pay justifies summary judgment, in the Government's view." Opp. at 2. This is incorrect. Failure to file on time, plus failure to pay, satisfies the first element of willfulness—*i.e.*, the conduct element—as a matter of law. *See* Mot. at p. 7. The second element—the mental state element—requires a showing that the Conards "voluntarily and intentionally" chose not to pay their tax obligations. This requirement is met by the facts, outlined in the Motion, showing that the Conards voluntarily and intentionally placed their tax obligations "on the back burner."

## II. The Conards' Use of a Paid Tax Preparer Did Not Affect Their Failure To Pay

Next, the Conards argue that their use of a paid tax preparer "is evidence of a desire to meet [their] obligations rather than willfully evade them." Opp. at 3. This argument implies, without citation to the record, that at some point, the Conards realized that they were in tax trouble and took an affirmative step to rectify it by hiring a paid preparer.

There was no such step. The Conards had used paid tax preparers since 2001, including three different paid tax preparers during the six years in question. For 2004, they used an accountant in Cleveland named Leonard Sott; for 2005-2007, they used J.K. Harris & Co.; for 2008, they went back to Sott; and for 2009, they used an accountant named Miller Musmar. *See* Mot. at Ex. A (T. Conard Tr.) 46:17-47:5 and 112:3-18 and Ex. B (J. Conard Tr.) 13:6. Every year, the Conards filed late, and every year, they failed to pay.

In a related tack, the Conards imply that one of their three tax preparers—J.K. Harris & Co.—is somehow to blame. *See* Op. at 2 (J.K. Harris was "what he believed to be a responsible

3

accounting firm"). But no tax preparer can be blamed for the Conards' payment of only $4,931 on a liability of $344,226. Nor can any return preparer be blamed for the Conards' decision to divert tax dollars to fund a business expansion and luxury goods. Finally, the Conards point to no facts showing that J.K. Harris was negligent or advised them incorrectly as to their obligation to pay estimated taxes. Tyrone Conard admits that he was to blame for late filing, at least in some years. *See* T. Conard Tr. at 52:10-19. In short, the Conards cannot shift responsibility to their tax preparers for their failure to make any good-faith effort to pay taxes.

**III.    When A Taxpayer Knows That Taxes Are Owed, "Non-necessities" Show Willfulness**

In the Motion, the United States points out that the Conards spent large amounts on luxury items, especially vehicles, and argues that the sums spent on those items could have satisfied much of their tax debt. *See* Mot. at 4-5.

The Conards do not contest the amounts of these purchases, the dates, or the fact that they knew when making the purchases that a tax debt was owed. Rather, they argue that the purchases were not as luxurious as those made by the debtor in *Clayton*. *See* Op. at 3-4. This argument ignores the standard for willfulness. Specifically, when a person knows that they owe back taxes, the purchase of any "non-necessities such as vacations and private school" are an indication that they are willfully failing to pay. *Clayton,* 468 B.R. at 770 (citing *In re Volpe,* 377 B.R. 579, 587 (Bankr. N.D. Ohio 2007). As set forth on p. 4-5 of the Motion, the Conards made many non-necessary purchases while knowing that taxes went unpaid.[1]

---

[1]    Regarding the luxury cars they purchased, the Conards argue that Tyrone Conard was told by his supervisor to buy an expensive car. *See* Op. at 4. This does not explain why, after Tyrone Conard left the company and no longer had a supervisor, the Conards purchased two (continued...)

**IV.     Joyce Conard Cannot Rely On A "Head In The Sand" Defense**

Finally, the Conards attempt to carve out Joyce Conard from the willfulness determination on the basis that she was not "involved in [the] decisions" to prioritize business expansion over taxes. Op. at 6. However, involvement in those decisions is not determinative of willfulness. A taxpayer acts willfully under Section 523(a) if she acts with "reckless disregard for whether tax has been paid." *See, e.g., Irvine*, 163 B.R. at 987.

Here, Joyce Conard understood her obligation to file and pay taxes every year. Mot. at Ex. D. p. 2 and Ex. B (J. Conard Tr.) at 20:20-22 and 21:12-20. She signed tax returns every year showing large unpaid balances, she was in charge of household expenses, and she made many of the purchases listed on p. 4-5 of the Motion. J. Conard Tr. at 24:17-22; 35-44. When asked why the taxes were not being paid, she stated simply: "like any other wife, if you think your husband is doing what he says he's doing or doing what you think he's doing, you don't question it." J. Conard Tr. at 25.

Joyce Conard was aware of her tax obligations and accepted the benefits of diverting tax funds to other uses. She cannot avoid liability simply by claiming that when your co-signor on a tax return chooses not to pay taxes, "you don't question it."

**V.      Continued Present-Day Failures To Pay Further Illustrate Willfulness**

When determining willfulness, the taxpayer's "acts or omissions are relevant if they took place either during the tax year(s) in which the debtor failed to pay or during later years while the

---

(… continued)
luxury cars totaling $98,203, which they owned simultaneously, plus a new Kia Optima. *See* Mot. a 4-5.

tax obligation remained due." *Clayton,* 468 B.R. at 770 (citing *In re Hamm*, 356 B.R. at 276). Two recent events further illustrate willfulness in this case.

First, the Conards recently consented to a finding of contempt based on their failure to pay over to the trustee the 25% of the residual commissions they receive from American Income Life Insurance Company. *See* Dkt. 52 at p. 1. They offer no excuse for their failure to pay these amounts, the vast majority of which go to the IRS.

Second, on June 5 of this year, Tyrone Conard filed an income tax return reporting $19,127 in tax due, with just $5 paid towards that amount. *See* Ex. J at p. 1 (Second Decl. of L. Lorello) at p. 2. In other words, he continues to knowingly and willfully divert money owed in taxes to other uses, thereby making the government an unwilling and continual source of financing.

## VI. Conclusion

This is not a case where debtors were making reasonable, good-faith efforts to pay taxes, but could not pay off the debt because of a rapid change in business fortunes. This is not a case where debtors did not understand the extent of their tax debt, or suddenly incurred a tax debt from which they could not extricate themselves.

Rather, over a six-year period, with full knowledge of what they were doing, the Debtors willfully and routinely chose to use tax obligations as a source of financing. During that time, they made no real effort to pay taxes, paying a token $4,931 of $344,226 owed. When taxpayers choose to finance a business in this manner, it may be true that criminal liability does not attach. However, the taxpayers do not receive a discharge of the underlying taxes.

In this case, the injustice of a discharge is made particularly stark by the fact that the taxpayers continue to directly benefit from residual commissions earned using tax dollars. To

allow them to collect such residuals indefinitely, while extinguishing the tax debt that financed them, would be an inequitable result.

<table>
<tr><td>Dated: September 20, 2017</td><td>DAVID A. HUBBERT<br>Acting Assistant Attorney General<br><br>/s/ Nelson Wagner<br>NELSON WAGNER<br>989413 (D.C.)<br>Trial Attorney, Tax Division<br>U.S. Department of Justice<br>P.O. Box 227<br>Washington, D.C. 20044<br>202-616-3369 (v)<br>202-514-6866 (f)<br>Nelson.Wagner@usdoj.gov</td></tr>
</table>

CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2017, I filed the foregoing via CM/ECF, which will electronically serve notice of filing on all parties to this action, including the following:

*Counsel for Debtors*
Robert R. Weed
Law Offices Of Robert Weed
300 Garrisonville Rd., Suite 201
Stafford, VA 22554
Email: robertweedlaw@yahoo.com

*Trustee*
Kevin R. McCarthy
McCarthy & White, PLLC
1751 Pinnacle Dr. Ste 1115
McLean, VA 22102
Email: krm@mccarthywhite.com

                                                                                                                    /s/ Nelson Wagner
                                                                                                                    NELSON WAGNER