## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

In re:

| | |
|---|---|
| Tyrone A. Conard, | Case No. 14-10093 |
| Joyce L Conard, | Chapter 7 |

       Debtors.

| | |
|---|---|
| Tyrone A. Conard, | AP No. 16-01121-KHK |
| Joyce L. Conard, | |

       Plaintiffs,

v.

Internal Revenue Service,

       Defendant.

## **MEMORANDUM OPINION**

Before the Court is the Motion for Summary Judgment (the "Motion") filed by

the Defendant Internal Revenue Service ("IRS") pursuant to Rule 56(a) of the

Federal Rules of Civil Procedure.  This adversary proceeding commenced when the

debtors, Tyrone A. Conard ("Mr. Conard") and Joyce L. Conard ("Ms. Conard")

(collectively, the "Debtors" or the "Conards"), filed a complaint (the "Complaint")

requesting a determination that their federal income tax liabilities for the years

2003 through 2010 were discharged in their chapter 7 bankruptcy case.  The IRS

opposes the relief requested by the Conards, asserting that the Debtors' tax

liabilities are nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(C) and asks the

Court to enter summary judgment in its favor on the grounds that the Debtors have

admitted facts establishing as a matter of law that they willfully attempted to evade

their tax obligations.  For the reasons stated below, the Court will grant summary
judgment to the IRS as to Mr. Conard and deny summary judgment as to Ms.
Conard.

<h2 style="text-align:center">Background</h2>

On January 8, 2014, the Debtors filed a joint chapter 7 bankruptcy case (Case
No. 14-10093-KHK) in this Court.  On April 16, 2014, they each received a
discharge pursuant to 11 U.S.C. § 727.

On February 14, 2014, the chapter 7 trustee designated the Debtors' case to
be an asset case and, on February 19, 2014, the Clerk notified creditors of the need
to file a proof of claim.  The IRS timely filed a proof of claim (Claim No. 2-1) in the
total amount of $706,410.34, representing income tax obligations for the years 2003
through 2013.[1]

The Debtors filed the Complaint on July 19, 2016, and the IRS filed its
Answer on August 22, 2016.  The IRS filed the Motion on April 10, 2017.  The
Debtors responded to the Motion, and the parties have submitted memoranda.  The
Court heard oral argument on the Motion on September 18, 2017, after which it
took the matter under advisement.

<h2 style="text-align:center">Findings of Fact</h2>

Rule 56(a) of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 56(a), made
applicable by Fed. R. Bankr. P. 7056, requires the Court to grant summary

---

[1] The Debtors have requested a determination that their tax obligations for the years 2003
through 2010 were discharged.  The IRS states in the Motion that there is no balance due
in connection with tax years 2003 and 2010.  The proof of claim filed by the IRS includes
only a secured claim for 2003; no amount is claimed for 2010.

judgment when the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law.  Rule 56(c)

sets forth the procedures necessary to support factual assertions in connection with

a motion for summary judgment.  The evidence in the record, submitted in

accordance with Rule 56(c) and considered in the light most favorable to the

Conards,[2] the non-moving parties, establishes the following.

During 2004 through 2009, Mr. Conard operated a life insurance sales agency

that sold policies for American Income Life Insurance Company ("American

Income"), a life insurance company that solicits business primarily with unions. *See*

Ex. A to Motion (Depo. Tr. of Mr. Conard) at 8-14; 12:1-14 26:10-12.  He operated as

a sole proprietorship called the Conard Agency until creating a limited liability

company in 2010. *Id*. at 14:14-22; 22:2-6.  American Income named him Director for

the Virginia/Maryland/D.C. region in 1999 and encouraged him to expand his

business by recruiting additional agents and opening new office locations. *Id*. at 8:3-

10:16.  He felt pressured by his supervisor at American Income to continue

expanding and increasing production under the threat of being replaced.  *Id*. at

57:16-22; 58:1-13.  He was also told that in order to recruit agents, he needed to

drive expensive cars to look successful.  *Id*. at 78:15-22.

Mr. Conard expanded his business, eventually growing the Conard Agency

from seven agents to about thirty, with five office locations, at its peak in 2004-05.

---

[2] "A court views the evidence and reasonable inferences drawn therefrom in
the light most favorable to the nonmoving party." *Wood v. Credit One Bank*, Civil Action
No. 3:15cv594, 2017 WL 4203551, at *16 (E.D. Va. Sept. 21, 2017). *See infra* note 4 and
accompanying text.

*Id.* at 13:19-20; 15:5-8; 17:19-22; 20:2-10; Ex. D to Motion at p.1.  He estimates that during 2004-05, the Conard Agency was generating about $60,000 per month in new annual premiums for American Income. *Id*. 17:10-18.  Mr. Conard was aware during this period of his obligation to file income tax returns and make estimated tax payments and was advised of both of these obligations by his accountant. *Id.* at 33:17-34:13; Ex. D at p.2.  He understood that he had a tax balance due and admits that since 2003 he received many notices from the IRS regarding his failure to file and pay and that in 2005 in 2005 or 2006 he received an in-person visit from an IRS officer.  *Id.* 34:14-35:5; 42:1-9; 43:1-12.

Mr. Conard chose to put his federal tax obligations "on the back burner" in favor of paying business expenses "to keep the business . . . afloat" and expanding his business to generate more income.  *Id*. at 39:3-12; 57:5-10; 59:2-8; 60:15-61:2; *see also* Ex. B to Motion at 25:1-20 (Ms. Conard discussing Mr. Conard's prioritization of certain expenses over taxes); Ex. D at p.1 ("My income was never sufficient to finance this expansion and also to pay my taxes when due").  The Conards self-reported federal income tax obligation for 2004 was just $8,658, but only $357.44 was paid, even though they earned an adjusted gross income averaging $203,637 per year in the succeeding five years and paid business expenses in excess of $100,000 per year during that time. Ex. C to Motion ¶ 4; Ex. A at 38:6-22; Corrected Reply to Opposition to Motion for Summary Judgment, Doc. No. 35, Ex. B (Corrected Copy of DKT. 20-4), First Declaration of Linda Lorello (Corrected Copy), p.2. The Conards also profited $35,000 in cash from the sale of an investment

property that Mr. Conard sold in in 2004 or 2005, yet chose to use this income to "help with one of the offices that I was opening at the time" and did not use it to pay any back taxes. Ex. A at 87:20-89:22; Ex. D p. 4-5; Ex. B at 29:14- 30:15.

The Conards made the following purchases while failing to pay their tax obligations:

- A $86,281 Mercedes Benz SL500, purchased in 2005 (Ex. A at 81:4-16; Ex. E to Motion at p.1; Ex. D at p. 6);

- A $47,590 2012 BMW 640i coupe (Ex. A at 81:21-82:3; Ex. F. to Motion at p. 1; Ex. B at 38:12-14);

- A $50,613.44 Buick Lacrosse, which Mr. Conard owned simultaneously with his BMW coupe and purchased because the BMW was difficult to drive in the snow (Ex. A at 81:18-20; Ex. G to Motion at p. 1; Ex. B at 38:1-5; Ex. D at p. 5);

- A Harley Softail motorcycle, purchased in 2008 or 2009 for $4,000 (Ex. A at 90:2; Ex. D p. 5);

- $48,000 worth of tuition for the Conards' son (Ex. A at p. 85:14-87:8; Ex. B at 28:13-29:13);

- A new Optima (Ex. A at 82:4-8; Ex. D at p. 5);

- Membership in a boat club for $360/month (Ex. A at 93:21-95:4; Ex. B at 38:15-41:6);

- At least $4,210 worth of expenditures at Saks Fifth Avenue (Ex. B at 50:19-51:2; Ex. H to Motion);

- Whole life insurance policies with a cash surrender value of $7,932.67 at the time the Conards filed for bankruptcy (Ex. A at 100:5-104:20; Ex. I to Motion at p. 3);

- Golf once a week (Ex. A at 95:5-17; Ex. D at p. 7);

- Golf trips to Florida to attend events put on by unions (Ex. A at 90:6-14);

- A vacation to the Bahamas that was paid for partially by American Income, with the remainder funded by the Conards (Ex. A at 90:15-19; 92:3-93:16; Ex. B at 34:2-18);

- Two large-screen televisions for their home ($3,130) (Ex. A at 114:20-115:2; 116:21- 117:2);

- $6,900 worth of new furniture for their home (Ex. B at 50:3-18).

In 2010, Mr. Conard ceased writing policies for American Income. Ex. A at 21:14-22:22; 26:10-27:3. He began receiving residual payments from American Income that he estimates are $11,000 per month. *Id.* 27:4-30:22. He set up a new insurance agency, All Financial Care, Inc., that writes policies for multiple insurance companies. *Id.* at 21:14-22:1; 23:4-19.

According to the IRS proof of claim, the Conards incurred income tax obligations in the total amount of $337,513.87 for the tax years 2004-2009 (excluding interest, penalties and $357.44 for the secured claim portion attributable

to tax year 2004).[3]  During this time, the Conards failed to file any of their tax returns on time and failed to make a single estimated tax payment toward these obligations. At the time of the commencement of this case, the Conards had paid a total of $4,932, which represents only a fraction of their federal income tax liability. Despite their failure to pay, the Debtors made numerous discretionary purchases of non-essential items during and after the tax periods in question.

## Conclusions of Law

Summary judgment is appropriate when ". . . there is no genuine issue as to

---

[3] No objection has been filed to the IRS proof of claim.  The table below [included in Corrected Reply to Opposition to Motion for Summary Judgment, Doc. No. 35, Ex. B (Corrected Copy of DKT. 20-4) First Declaration of Linda Lorello (Corrected Copy), p. 2] represents the IRS computation of the Conards' income tax obligations as set forth in the Motion:

| Tax Year | Date return received by IRS | Adjusted Gross Income Shown on Return | Est. Tax Payments Made By Debtors | Tax Due As Shown on Return | Total Payments Made Towards Income Tax Liability | Balance Due as of August 15, 2016 (including interest and penalties) |
|---|---|---|---|---|---|---|
| 2004 | 5/21/2008 | $50,561 | $0 | $8,658 | $357.44 | $18,117.26 |
| 2005 | 5/19/2008 | $280,669 | $0 | $83,075 | $50 | $187,875.11 |
| 2006 | 5/19/2008 | $282,817 | $0 | $84,950 | $8 | $183,238.33 |
| 2007 | 5/19/2008 | $259,517 | $0 | $76,598 | $0 | $140,463.63 |
| 2008 | 5/20/2010 | $195,098 | $0 | $50,443 | $2,000 | $92,091.38 |
| 2009 | 10/31/2011 | $153,164 | $0 | $40,502 | $2,517 | $67,207.56 |
| **Totals:** | | **$1,221,826** | **$0** | **$344,226** | **$4,932** | **$688,993.27** |

According to this exhibit, taxes due for the years 2004-2009 total $344,226.  Neither party has asked the Court to determine taxes incurred, taxes currently due, or the extent to which the amount currently claimed by the IRS is comprised of penalties and interest.  The Court will not address the discrepancy between the proof of claim and this exhibit because the discrepancy has no bearing on the Court's ruling.

any material fact, and the moving party is entitled to judgment as a matter of law."

Fed. R. Bankr. P. 7056. The moving party has the initial burden of demonstrating

the basis for the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).  This

burden must generally be established by a preponderance of the evidence.[4]  Once

the moving party has met its initial burden, the burden then shifts to the non-

moving party to present specific facts demonstrating that there is a genuine issue

---

[4] Chief Judge St. John has comprehensively set forth the standard governing a motion for summary judgment in *Marcus v. Jeffries (In re Jeffries)*, 356 B.R. 661, 666 (Bankr. E.D. Va. 2006):

> As this Court has previously stated, summary judgment will be granted if two elements are proven. The first requirement commands that " 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.' " *In re Prof'l Coatings (N.A.),* 210 B.R. 66, 72–73 (Bankr.E.D.Va.1997) (quoting Fed.R.Civ.P. 56(c)). With respect to this element, the Supreme Court has defined "material fact" as "one that might affect the outcome of the suit." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The burden of establishing that there is no genuine issue of material fact rests upon the moving party and must be proven by a preponderance of the evidence. *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Maryland Highways Contractors Ass'n v. Maryland,* 933 F.2d 1246, 1252 (4th Cir.1991); *King v. Speaks* (*In re Speaks*), 193 B.R. 436, 440 (Bankr.E.D.Va.1995)).

The second requirement is that " 'the moving party is entitled to judgment as a matter of law.' " *Id.* at 73. There are several threshold standards with regard to this requirement. First, summary judgment will not be granted if the non-moving party can demonstrate that a genuine issue of material fact exists such that, if resolved in favor of the non-moving party, would preclude the ultimate relief sought by the moving party. *Id.* (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). Integral to this determination is that a motion for summary judgment can be granted only if "there can be but one reasonable conclusion" as to the outcome of the case. *Id.* (quoting *Official Comm. of Unsecured Creditors ex rel. S. Galeski Optical Co. v. Estate of Galeski* (*In re S. Galeski Optical Co.*), 169 B.R. 360, 362 (Bankr.E.D.Va.1994); citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). Finally, when considering a motion for summary judgment, the Court " 'should draw all inferences from the underlying facts in a light most favorable to the nonmoving party.' " *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *In re Speaks,*193 B.R. at 440).

for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). Whether a fact is material or not depends on the substantive law at issue in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

Under § 523(a)(1)(C) of the Bankruptcy Code, 11 U.S.C. § 523(a)(1)(C), a discharge in bankruptcy "does not discharge an individual debtor from any debt for a tax or customs duty with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." Although there appears to be no Fourth Circuit precedent interpreting § 523(a)(1)(C), other courts have determined that the willful evasion of tax debts under § 523(a)(1)(C) encompasses "both a conduct requirement (that the debtor sought 'in any manner to evade or defeat' his tax liability) and a mental state requirement (that the debtor did so 'willfully')." *United States v. Clayton,* 468 B.R. 763, 770 (M.D.N.C. 2012) quoting *In re Birkenstock*, 87 F.3d 947, 951 (7th Cir.1996); *see also Tudisco v. U.S. Dept. of Treasury (In re Tudisco),* 183 F.3d 133, 136 (2d Cir. 1999)*; United States v. Fegeley (In re Fegeley)*, 118 F.3d 979, 983 (3d Cir. 1997); *Griffith v. United States (In re Griffith),* 206 F.3d 1389, 1396 (11th Cir. 2000). The IRS contends that both of these elements are undisputedly present in this case.

A debtor's mere failure to pay his taxes is not sufficient to establish that he has attempted to evade or defeat his taxes; however, when considered in the totality

of the circumstances, nonpayment is relevant. *Clayton*, 468 B.R. at 770 (citing *Dalton v. IRS*, 77 F.3d 1297, 1301 (10th Cir. 1996)). The *Clayton* court listed various factors that, when coupled with nonpayment, have been found to be sufficient to satisfy the conduct element. These include the failure to file timely returns, the concealment of assets, inadequate recordkeeping, intra-family or fraudulent transfers, and a lavish or extravagant lifestyle, which the court found to be relevant "if they took place during the tax year(s) in which the debtor failed to pay or during later years while the tax obligation remained due." *Id.* In *Clayton*, the court pointed to the debtor's payment of discretionary expenses that took place during the time the debtor was aware that he had not fully paid his federal income taxes and found it to be evidence that the debtor prioritized his discretionary spending over paying his taxes. *Id.* at 772-73.[5]

Here, it is undisputed that the Debtors failed to timely file any of their tax returns for the years in question. The Debtors have not challenged the existence or accuracy of the list submitted by the IRS of their discretionary expenditures that occurred during and after each of the years that the tax debts were incurred. Instead, they contend that the expenditures were either not discretionary or were necessary to the operation of Mr. Conard's business. Their contentions that Mr. Conard felt pressured to expand his business and to present himself as affluent, however, even if taken as true, fall short of establishing a question of fact as to the

---

[5] *See also Lynch v. United States (In re Lynch*,) 299 B.R. 62, 77 (Bankr. S.D.N.Y. 2003) (willful evasion of payment of tax liabilities found where the debtor "knowingly spent several thousand dollars per month on discretionary expenditures that could not reasonably be regarded as essentials, knowing that her tax obligations had to be satisfied, and were unpaid.").

conduct requirement set forth in *Clayton*. The discretionary expenditures listed by the IRS, on their face, could not be considered business-related and the Debtors have offered no evidence to support that they are. Mr. Conard's desire to present himself as affluent is, at best, immaterial to the question whether he willfully attempted to evade his tax obligations; more likely, it supports a finding that his lifestyle was extravagant.

The Debtors do not dispute that their tax returns were filed late. They do not dispute their failure to make tax payments. They offer no specific facts establishing that a genuine issue exists as to whether the funds they spent for vehicles, college tuition, home furnishings and recreation could be regarded as essential. And they do not dispute that these discretionary expenditures were made at a time when there were unpaid tax obligations.[6] Thus, the IRS has established that there is no genuine issue of fact regarding the presence of the conduct element of § 523(a)(1)(C).

The IRS also argues that no genuine issue of fact exists regarding the establishment of the mental state requirement described in *Clayton*, that the Debtors' actions were willful. In order "to meet the mental state requirement of § 523(a)(1)(C), the Government must prove that the debtor '(1) had a duty to file income tax returns and pay taxes; (2) knew that he had such a duty; and (3) voluntarily and intentionally violated that duty.'" *Clayton*, 468 B.R. at 771, quoting *United States v. Fretz (In re Fretz),* 244 F.3d 1223, 1330 (11th Cir. 2001). The IRS

---

[6]The record demonstrates that many of these expenditures occurred after 2009, the latest year for which the IRS is asserting the nondischargeability of the tax debt.

contends that it has satisfied each of these elements and that the Debtors have

offered no facts to dispute that their failure to pay their tax obligations was willful.

Mr. Conard admitted that he knew he had a duty to file tax returns and pay

taxes for the tax years under dispute.  He contends that a question of fact exists as

to whether he voluntarily and intentionally violated that duty.  Ms. Conard also

acknowledges that she was aware that she had a duty to file tax returns, Ex.B at

20:20-22, but claimed in her deposition that she had no knowledge of (1) her

obligation to make estimated tax payments, Ex.B at 21:4-11, (2) why her and her

husband's tax returns were filed late, Ex.B 22:9-11, and (3) why the taxes were not

paid, Ex.B at 22:12-20, explaining that "my husband took care of it all."  Ex.B at

22:3-8.  She further testified that she did not manage the financial affairs of the

business and relied on her husband to handle their tax duties.  Ex.B at 12-19.

Again, *Clayton* is instructive in its finding that "lavish spending coupled with

the knowledge of tax debts is a[n] . . . indication that a debtor act[ed] willfully in the

evasion of his tax obligations."  468 B.R. at 772.  Other courts have also held that

payment of discretionary expenditures instead of paying tax debts known to be

owed amounts to the voluntary and intentional violation of the debtor's duty to pay

taxes.  *See, e.g., Peterson v. United States (In re Petersen)*, 2012 WL 1906335, at *3

(Bankr. S.D. Fla. May 25, 2012); *see also Stamper v. United States (In re Gardner)*,

360 F.3d 551, 561 (6th Cir. 2004) (a debtor who acknowledged his legal

responsibility to pay taxes and could have used some of his earnings to do so but

consciously decided not to willfully avoided his tax liabilities).

The record is uncontroverted that Mr. Conard consciously chose to use his earnings to pay for discretionary items rather than to pay his taxes despite being aware of his legal responsibility to pay taxes. Again, he has offered no specific facts that would refute the evidence offered by IRS.[7]  Instead, Mr. Conard contends that the IRS is relying primarily on his failure to timely file returns as the basis for seeking summary judgment and suggests that a willful evasion of tax obligations must rise to the level of a criminal failure in order to trigger the provisions of § 523(a)(1)(C). Mr. Conard further contends that evidence that he sought professional assistance in regard to his tax obligations creates a genuine dispute regarding his willfulness.

Contrary to Mr. Conard's assertions, the IRS does not need to establish that the debtor acted with fraudulent intent. *In re Fegeley,* 118 F.3d at 984; *In re Petersen*, 2012 WL 1906335, at *3. Willfulness for purposes of § 523(a)(1)(C) requires only that the debtor acted knowingly and deliberately, not that he acted with criminal intent. *See Bruner v. United States* (*In re Bruner*), 55 F.3d 195, 200 (5th Cir. 1995); *Toti v. United States* (*In re Toti*), 24 F.3d 806, 809 (6th Cir. 1994); *Dalton v. IRS*, 77 F.3d 1297, 1300 (10th Cir. 1996). In *Toti*, the Sixth Circuit explicitly held that applying a criminal standard to § 523(a)(1)(C) is incorrect. *In re Toti*, 24 F.3d at 809. Evidence that Mr. Conard sought the assistance of professionals does not, in itself, create a genuine dispute when it is otherwise undisputed that Mr. Conard continued to consciously disregard his obligation to

---

[7] The Complaint fails to assert any basis whatsoever to support the Debtors' contention that the tax obligations in question have been discharged.

13

make tax payments in favor of purchasing discretionary items.  In short, Mr.

Conard has offered no specific facts that would refute the evidence presented by the

IRS establishing that he voluntarily and intentionally violated his duty to pay his

taxes.  As to Mr. Conard, the mental state requirement of § 523(a)(1)(C) has been

met.  Even when drawing all inferences from the facts in the light most favorable to

Mr. Conard, the only reasonable conclusion is that he willfully evaded his tax

obligations.

The IRS has failed, however, to demonstrate that no genuine issue of fact is

present as to Ms. Conard's willfulness.  Ms. Conard's testimony that she had no

control over Mr. Conard's business expenditures and that she depended on her

husband to fulfill all of their tax obligations establishes a factual issue regarding

whether she intentionally violated her duty to pay her income taxes.

There is no genuine issue of fact concerning Mr. Conard's conduct and mental

state for each of the tax years in question.  The record is uncontroverted that his

knowledge of his obligation to pay his income taxes, his failure to do so and his

conscious and willful decision to expend available funds on discretionary items

occurred during and subsequent to 2003 through 2009, the tax years under

consideration.  *See In re Gardner*, 360 F.3d at 560-61 (lavish lifestyle in subsequent

years evidenced an ability to pay the previous years' tax liabilities and is relevant to

determining willful evasion of those previous years' taxes).  As to Ms. Conard, a

genuine dispute exists as to whether she voluntarily and intentionally violated her

obligation to pay taxes in connection with each of these years.

## **Conclusion**

For the reasons stated above, the Motion will be granted as to Mr. Conard. The Court finds that no genuine issue of fact exists regarding the applicability of § 523(a)(1)(C) to the income tax debt owed by Mr. Conard for the tax years 2004-2009.[8] Accordingly, Mr. Conard's chapter 7 discharge does not discharge him from his debt to the IRS for tax years 2004 though 2009.

As to Ms. Conard, the Court finds that a genuine dispute of material fact exists for trial. Therefore, the Motion is denied as to Ms. Conard.

A separate order will be issued.

Date: December 13, 2017                    _____/s/ Keith L. Phillips_____
                                          United States Bankruptcy Judge

Copies to:                                Entered on Docket: December 14, 2017

Tyrone A. Conard
Joyce L. Conard
15581 Andover Heights Drive
Woodbridge, VA 22193

Robert R. Weed
Law Offices Of Robert Weed
300 Garrisonville Road, Suite 201
Stafford, VA 22554

Nelson D. Wagner
U.S. Department of Justice, Tax Division
P O Box 227
Washington, DC 20044

---

[8] The Court has not been asked by either party to determine the amounts due for any tax year, and the pleadings do not indicate that the amounts and components of the obligations are in dispute. The Complaint seeks only a determination that the federal income tax debt for the tax years 2003 through 2010 has been discharged. The Motion states that it seeks only a determination that 11 U.S.C. § 523(a)(1)(C) is applicable to tax years 2004 through 2009 and that no balance is due in connection with tax years 2003 and 2010.

Kevin R. McCarthy
1751 Pinnacle Drive Suite 1115
McLean, VA 22102