# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| In re: <br><br> Tyrone A. Conard and <br> Joyce L. Conard, <br><br> Debtors. | Case No.  14-10093-KHK <br> (Chapter 7) |
| Tyrone A. Conard and Joyce L. Conard, <br><br> Plaintiffs, <br><br> vs. <br><br> Internal Revenue Service, <br><br> Defendant. | Adv. Proc. No. 16-01121-KHK |

## MEMORANDUM OPINION

The Court must decide in this adversary proceeding whether Joyce L. Conard, ("Mrs. Conard") willfully attempted to evade her federal income tax liabilities for the years 2003 through 2009 within the meaning of 11 U.S.C. § 523(a)(1)(C). A trial on the issue was held on January 26, 2018 (the "Hearing"). For the reasons set forth below, the Court holds that Mrs. Conard did not willfully attempt to evade her tax obligations and therefore the taxes she owed for the years 2003 through 2009 are discharged.

## Parties and Procedural History

Tyrone A. Conard ("Mr. Conard") and Joyce L. Conard, ("Mrs. Conard") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on January 8, 2014, and received a discharge on April 14, 2014. Among the debts listed on their

schedules were tax liabilities owed to the IRS for a number of years. The Internal Revenue Service ("IRS") filed a proof of claim (Claim No. 2-1) in the amount of $706,410.34, representing income tax liabilities for the years 2003 through 2013.

The present adversary proceeding was commenced on July 19, 2016. At the conclusion of discovery, the IRS filed a Motion for Summary Judgment in its favor on April 10, 2017. On December 13, 2017, the Court granted the IRS' motion as to Mr. Conard finding that he willfully attempted to evade payment of his taxes. The Court denied the motion as to Ms. Conard finding that a genuine dispute of material fact existed for trial on the issue of her willful evasion of payment. A trial on the merits was held on January 26, 2018, and at the conclusion of the trial, the Court took the matter under advisement.

## Jurisdiction and Venue

This Court has subject-matter jurisdiction under 28 U.S.C. §§1334(b) and 157(a) and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. Under 28 U.S.C. § 157(b)(2)(I), a determination as to whether a particular debtor has been discharged is a core proceeding in which a final judgment or order may be entered by a bankruptcy judge. Venue is proper in this district under 28 U.S.C. § 1409(a). Upon consideration of the evidence and arguments presented by counsel and the pleadings submitted, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

**Findings of Fact**

Mr. & Mrs. Conard moved to northern Virginia in 2001 after he was promoted to Director for the Virginia/Maryland/D.C. region for American Income Life Insurance Company. IRS Ex. K, (Depo Tr. of Mrs. Conard) at 12-13. The Conards maintained a strict division of responsibilities for the family finances. Mrs. Conard was responsible for managing their household expenses, while Mr. Conard controlled the business expenses. *Id.* at 18:3-5. Hrg. Tr. at 27:25-28:12. When she needed funds to pay the household expenses, Mr. Conard would give her money. *Id.* at 35:2-5. See also IRS Ex. K at 24:8-16. She understood that they were struggling financially. *Id.* at 18:12-14; 22:15-20. Sometimes when she asked for money to cover household expenses Mr. Conard would tell her that some of those bills would have to be paid late. *Id.* at 24:8-16.

For several years, Mrs. Conard worked at her husband's insurance firm, the Conard Agency (the "Agency"), as a receptionist answering telephones and greeting clients. Hrg. Tr. at 19:24-20:11. She had no role in tracking the finances at the Agency. IRS Ex. K at 9:20-10:6. See also Hrg. Tr. at 20:1-6. She stopped working full time in the office when her grandchild was born in May 2006. *Id.* at 20:7-11.

Before Mr. Conard opened the Agency, Mrs. Conard was responsible for ensuring that their joint tax returns were timely filed. Hrg. Tr. at 26:19-27:3. She gathered the necessary documents and engaged the services of a tax preparer. *Id.* When Mr. Conard went into business for himself, he assumed full responsibility for their taxes

3

because Mrs. Conard was not capable of handling their more complicated business tax obligations. *Id.* at 30:19-25. See also IRS Ex. K at 12:11-17; 22:6-8. Thereafter, her role was limited to gathering statements regarding their household expenses and giving them to her husband. Hrg. Tr. at 28:13-29:2. Mr. Conard was responsible for engaging and providing the tax preparer with the documents needed to prepare their joint returns. IRS Ex. K at 12-14.

Mrs. Conard knew she had a duty to file tax returns every year. *Id.* at 20:20-22. She also assumed that they owed taxes because of the business. Hrg. Tr. at 30:2-6. After she relinquished responsibility for having the returns prepared, she knew they were not being filed on time, but was not concerned because when she endorsed the returns she also signed requests for extensions. *Id.* at 60:1-12. She admitted not reading the returns when they were presented to her. *Id.* at 45:20-46:5; 48:3-7; 56:12-20. She did not know how long an extension could last. IRS Ex. K at 21:1-11. She did not understand that she and her spouse were obligated to pay estimated taxes throughout the year because of the business. Hrg. Tr. at 19-21.

Mrs. Conard knew that they were having problems with the IRS. Mr. Conard told her the problems occurred because their returns were prepared improperly, but he assured her he was seeking professional help to resolve the issues. *Id.* at 29:3-19; 44:8-13. Although she knew that they owed taxes, Mrs. Conard was not aware of the amount owed. *Id.* at 29-30; 41:21-24; 47:18-48:7; 49:6-9. Mr. Conard also told her that they had paid taxes, but he did not tell her how much had been paid. *Id.* at 35:13-15; 46:6-11; 55:21-23; 56:9-20. At some point, Mr. Conard told his spouse that they were

4

on a payment plan to pay taxes. She took him at his word believing he had no reason to lie. *Id.* at 46:13-17.

Between 2004 and 2009, the IRS mailed at least 30 notices to the Conards regarding their outstanding tax debt. *Id.* at 72:16-18. *Id.* at 43:1-5. Mrs. Conard admitted receiving the notices, but she gave them to her spouse without reading them. *Id.* at 31:10-32:6. The notices upset her, but she believed her spouse was trying to address their tax problems and she knew she was not capable of addressing the issues. *Id.* When she discussed the taxes with Mr. Conard, he would tell her not to worry. *Id.* She took him at his word when he said he was handling the taxes. *Id.* at 31:19-22; 46:10-21. When she found a tax notice on the front door she gave it to him and believed he took care of the matter. *Id.* at 32:7-14. They did not discuss paying off the debt. *Id.* at 30:17-25; 53:12-20; 54-55.

According to the IRS' proof of claim, the Conards incurred income tax obligations in the total amount of $337,513.87 for the tax years 2004-2009 (excluding interest, penalties). During this period, the Conards failed to file any of their tax returns on time and failed to make any estimated tax payments toward these obligations. When this bankruptcy was commenced, the Conards had paid a total of $4,932 in taxes for the relevant years. Despite their failure to pay, the Debtors made the following discretionary purchases of non-essential items during and after the tax periods under review:

- A $86,281 Mercedes Benz SL500, purchased in 2005 (IRS Ex. L at 81:4-16; IRS Ex. O at p.1; IRS Ex. E at p. 9);

- A $47,590 2012 BMW 640i coupe (IRS Ex. L at 81:21-82:3; IRS Ex. P. at p. 1; IRS Ex. K at 38:12-14);
- A $50,613.44 Buick Lacrosse, which Mr. Conard owned simultaneously with his BMW coupe and purchased because the BMW was difficult to drive in the snow (IRS Ex. L at 81:18-20; IRS Ex. Q at p. 1; IRS Ex. K at 38:1-5; IRS Ex. N at p. 5);
- A Harley Softail motorcycle, purchased in 2008 or 2009 for $4,000 (IRS Ex. L at 90:2; IRS Ex. N p. 5);
- $48,000 worth of tuition for the Conards' son (IRS Ex. L at p. 85:14- 87:8; IRS Ex. K at 28:13-29:13);
- A new Optima (IRS Ex. L at 82:4-8; IRS Ex. N at p. 5);
- Membership in a boat club for $360/month (IRS Ex. L at 93:21-95:4; IRS Ex. K at 38:15-41:6);
- At least $4,210 worth of expenditures at Saks Fifth Avenue (IRS Ex. K at 50:19-51:2; IRS Ex. R;
- Whole life insurance policies with a cash surrender value of $7,932.67 at the time the Conards filed for bankruptcy (IRS Ex. L at 100:5-104:20; IRS Ex. S at p. 3);
- Golf once a week (IRS Ex. L at 95:5-17; IRS Ex. N at p. 7);
- Golf trips to Florida to attend events put on by unions (IRS Ex. L at 90:6-14);
- A vacation to the Bahamas that was paid for partially by American Income, with the remainder funded by the Conards (IRS Ex. L at 90:15-19; 92:3-93:16; IRS Ex. K at 34:2-18);
- Two large-screen televisions for their home ($3,130) (IRS Ex. L at 114:20-115:2; 116:21- 117:2);
- $6,900 worth of new furniture for their home (IRS Ex. K at 50:3-18).[1]

## Conclusions of Law

---

[1] See Memorandum Opinion, Doc. No. 38, p.5-6.

Under section 523(a)(1)(C) of the Bankruptcy Code, a discharge in bankruptcy "does not discharge an individual debtor from any debt for a tax or customs duty with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C). Although there appears to be no Fourth Circuit precedent interpreting section 523(a)(1)(C), other courts have determined that the willful evasion of tax debts under section 523(a)(1)(C) encompasses "both a conduct requirement (that the debtor sought 'in any manner to evade or defeat' his tax liability) and a mental state requirement (that the debtor did so 'willfully')." *United States v. Clayton*, 468 B.R. 763, 770 (M.D.N.C. 2012) quoting *In re Birkenstock*, 87 F.3d 947, 951 (7th Cir.1996); see also *Tudisco v. U.S. Dept. of Treasury (In re Tudisco)*, 183 F.3d 133, 136 (2d Cir. 1999); *United States v. Fegeley (In re Fegeley)*, 118 F.3d 979, 983 (3d Cir. 1997); *Griffith v. United States (In re Griffith)*, 206 F.3d 1389, 1396 (11th Cir. 2000). The IRS contends that both of these elements are present in this case.

In order to prevail, the IRS must prove by a preponderance of the evidence that Mrs. Conard knew her taxes were due and not paid and that she chose not to pay them. The Court will first address the conduct element. A failure to file returns coupled with nonpayment of taxes can satisfy the conduct requirement. *Clayton*, 468 B.R. at 770. In this case, Mrs. Conard admitted that she and her spouse failed to timely file their tax returns for the years in question. She also admitted that she and her spouse made the expenditures listed above during and after the years that the tax debts were incurred. Therefore, the IRS has established the presence of the conduct element of section

7

523(a)(1)(C).

To satisfy the mental state requirement, the IRS "must prove that the debtor (1) had a duty to file income tax returns; (2) knew that he had a such a duty: and (3) voluntarily and intentionally violated that duty." *Clayton*, 468 B.R. at 771 quoting *United Sate v. Fretz (In re Fretz)*, 244 F.3d 1223, 11330 (11) Cir. 2001). The court in *Clayton* also found that "lavish spending coupled with the knowledge of tax debts is a[n] … indication that a debtor act[ed] willfully in the evasion of his tax obligations." 468 B.R. at 772. Other courts have also held that payment of discretionary expenditures instead of paying tax debts known to be owed amounts to the voluntary and intentional violation of the debtor's duty to pay taxes. *See, e.g.*, *Petersen v. United States (In re Petersen)*, 2012 WL 1906335, at *3 (Bankr. S.D. Fla. May 25, 2012); see also *Stamper v. United States (In re Gardner)*, 360 F.3d 551, 561 (6th Cir. 2004) (a debtor who acknowledged his legal responsibility to pay taxes and could have used some of his earnings to do so, but consciously decided not to, willfully avoided his tax liabilities).

Mrs. Conard was a credible witness. At trial she testified that her husband told her he was paying the taxes and that she believed him. Hrg. Tr. at 35:13-14; Tr. at 55:22-23; *Id.* at 56:9. All of her testimony substantiated that she had no control over Mr. Conard's expenditures and that she depended on her husband to fulfill all of their tax obligations. Further, and importantly, her testimony established that she did not know that the taxes were not being paid. The IRS failed to present any evidence to show Mrs. Conard intended not to meet her tax obligations. Having heard Mrs.

Conard's testimony, the IRS's evidence, and after reviewing the record in this case, this Court is satisfied that Mrs. Conard did not know that the taxes were not being paid and therefore, did not have the requisite mental state to willfully evade her taxes under 11 U.S.C. §523(a)(1)(C).

For the reasons stated above, this Court finds that Mrs. Conard is discharged from her debt to the IRS for tax years 2004 through 2009.

A separate order will be issued.

Date: Jul 6 2018

/s/ Klinette Kindred

Klinette H. Kindred
United States Bankruptcy Judge

Copies to:

Tyrone A. Conard
Joyce L. Conard
15581 Andover Heights Drive
Woodbridge, VA 22193

Entered on Docket: July 6, 2018

Robert R. Weed
Law Offices Of Robert Weed
300 Garrisonville Road, Suite 201
Stafford, VA 22554

Nelson D. Wagner
U.S. Department of Justice, Tax Division
P O Box 227
Washington, DC 20044

Kevin R. McCarthy
1751 Pinnacle Drive Suite 1115
McLean, VA 22102